UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-CV-10026-MOORE/Elfenbein

SHONTA BOLDS,

    Plaintiff,

v.

FUTURE INVESTMENT HOLDINGS LLC
d/b/a The VIP Gentlemen's Club, *et al.*,

    Defendants.

_____/

**REPORT AND RECOMMENDATION**

**THIS CAUSE** is before the Court on the Parties' Joint Motion for In Camera Review and Approval of FLSA Settlement Agreement and for Dismissal with Prejudice (the "Joint Motion"), ECF No. [46]. The Honorable K. Michael Moore has referred the Motion to me "to take all necessary and proper action required by law" "except with regard to dismissal with prejudice," which Judge Moore will rule upon after the undersigned "has adjudicated the Parties' request for approval of their settlement." *See* ECF No. [47].

**I.    BACKGROUND**

On March 17, 2025, Plaintiff Shonta Bolds filed her Complaint against Defendants Future Investment Holdings LLC d/b/a The VIP Gentlemen's Club, Yuliya Andrews, and Jerry Wayne Andrews (collectively "Defendants"). *See* ECF No. [1] at 1. Plaintiff's Complaint asserted one count under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19, alleging that Defendants failed to pay her overtime compensation, minimum wage, and tips and seeking an equal sum in liquidated damages. *See generally* ECF No. [1].

On September 22, 2025, the Parties filed a Notice of Settlement, ECF No. [42], and on November 6, 2025, they filed the Joint Motion, seeking approval of the settlement, ECF No. [46]. Following Judge Moore's referral of the Joint Motion, the undersigned scheduled a Fairness Hearing via Zoom, which took place on November 25, 2025. *See* ECF No. [48]. During the Fairness Hearing, the Court orally published all material terms of the Settlement Agreement on the record and discussed the disputed issues in the case between the Parties as well as their respective evaluations of the case prior to settlement. *See* ECF No. [49]. The Court also discussed the amount of attorney's fees and costs that Plaintiff's counsel would recover as part of the settlement and ultimately ordered Plaintiff to provide supplemental briefing regarding the reasonableness of Plaintiff's counsel's attorney's fees, including any law supporting the proposed fees, counsel's time sheets, and affidavits necessary to support the lodestar analysis. *See* ECF No. [49]. Plaintiff has since provided the Court with the necessary supplemental briefing, affidavits, and timesheets. *See* ECF No. [50]. The Motion is now ripe for review.

For the reasons explained below, the undersigned respectfully **RECOMMENDS** that the Joint Motion, **ECF No. [46]**, be **GRANTED in part and DENIED in part** and the Settlement Agreement between Plaintiff and Defendants, including the allocation of funds towards Plaintiff's attorney's fees and costs, be **APPROVED, except for Paragraphs 11(C) and 11(D)**.

**II.     LEGAL STANDARDS**

"There are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees." *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1352 (11th Cir. 1982). The one relevant here arises "in the context of suits brought directly by employees against their employer to recover back wages for FLSA violations." *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1306 (11th

2

Cir. 2013) (alteration adopted and quotation marks omitted). "In those lawsuits, the parties may present to the district court a proposed settlement and the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.* (quotation marks omitted). To pass scrutiny, the agreement must be "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food*, 679 F.2d at 1355; *see also Nall*, 723 F.3d at 1308 n.3.

"If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute," a court can "approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food*, 679 F.2d at 1354. When deciding whether the settlement reflects a reasonable compromise, courts in this district typically evaluate "various factors, including: (1) the possible existence of collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel." *Nagy v. Aventura Worldwide Transp. Serv., Inc.*, 631 F. Supp. 3d 1226, 1229 (S.D. Fla. 2022); *Silva v. Miller*, 547 F. Supp. 2d 1299, 1303-04 (S.D. Fla. 2008).

"Additionally, the FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *DeGraff v. SMA Behav. Health Servs., Inc.*, 945 F. Supp. 2d 1324, 1328 (M.D. Fla. 2013) (quotation marks omitted). When evaluating counsel's fee award, courts should consider factors like the "reasonableness of the hours expended" and "the relationship between the amount of the fee awarded and the results obtained" for the client. *See Hensley v. Eckerhart*, 461 U.S. 424, 437, 438 n.13 (1983).

### III. ANALYSIS

#### a. Reasonableness of the Settlement

To decide whether the settlement here reflects a reasonable compromise, the Court has considered Plaintiff's claims as outlined in her Statement of Claim compared to the strengths and weaknesses of the Parties' respective cases, which they addressed in their Joint Motion and at the Fairness Hearing. In her Statement of Claim, Plaintiff sought $127,588.57 in unpaid tips, unpaid minimum wages, and unpaid overtime with an equal amount in liquidated damages for a total sum of $255,177.14. By comparison, the Parties have negotiated a settlement in which she will receive $227,500 of which $62,500 represents Plaintiff's alleged unpaid tips, unpaid minimum wages, and unpaid overtime wages, another $62,500 represents liquidated damages, and the remaining $102,500 represents the amount of recoverable attorney's fees and costs.

To support the reasonableness of the settlement, the Parties explain in their Motion that this case involved "several hotly disputed issues [as to liability and damages] and both sides have significant risk of defeat at trial." *See* ECF No. [46] at 5. Specifically, the Parties disputed issues, such as "(a) the number of hours Plaintiff allegedly worked each week;" (b) whether Plaintiff was exempt from receiving overtime wages "under the FLSA during any weeks where she claims to have worked more than forty hours;" (c) whether Plaintiff qualified as an "employee" as that term is defined; (d) "whether the individual Defendants represent Plaintiff's 'employer' as that term is defined and interpreted under the FLSA;" (e) "whether Defendants' alleged unlawful actions were willful;" and (f) "whether Defendants acted in good faith in" determining how to compensate Plaintiff. *See* ECF No. [46] at 5. At the Fairness Hearing, the Parties further explained that there was a significant dispute as to whether Plaintiff would qualify as an independent contractor versus an employee under a seven-factor fact-driven analysis and that the issue of willfulness, which

impacts the recoverability of liquidated damages, was contested as the Defendants received and followed advice from a lawyer regarding the independent contractor classification. In addition, at the Fairness Hearing, Plaintiff's counsel explained that the amount of unpaid tips, unpaid wages, and unpaid overtime in the Statement of Claim was a rough estimate based on their preliminary review of 43,000 text messages but was not based on specific time sheets. Comparing the amount of wages sought in the Statement of Claim ($127,588.57) to the amount Plaintiff will receive in the settlement ($62,500), the Court finds that the latter amount is reasonable as it reflects a compromise over disputes as to FLSA liability and the amount of wages due.

Regarding liquidated damages, the Parties explained that the recoverability of such damages was uncertain given Defendants' good-faith reliance on legal advice regarding Plaintiff's employment classification and the existence of a bona fide dispute. *See Davila v. Menendez*, 717 F.3d 1179, 1186 (11th Cir. 2013) (quoting *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1566 (11th Cir. 1991)) ("To satisfy the subjective 'good faith' component, the employer has the burden of proving that it had an honest intention to ascertain what the Act requires and to act in accordance with it."). The Parties have demonstrated that Defendant genuinely disputed that Plaintiff was entitled to any overtime wages under the FLSA and that they did not act willfully in failing to pay any allegedly unpaid overtime wages. *See, e.g., Patterson v. Acad. Fire Prot., Inc.*, No. 23-CV-87-34JBT, 2014 WL 169812, at *6 (M.D. Fla. Jan. 8, 2014) (finding FLSA settlement agreement was fair and reasonable when the plaintiff did not receive liquidated damages because of a genuine dispute as to whether the plaintiff was entitled to such damages). The Court, therefore, finds this compromise of liquidated damages in the amount of $62,500, which represents a sum equal to what Plaintiff is receiving for allegedly unpaid tips, unpaid wages, and unpaid overtime, to be reasonable under the circumstances.

The Court notes, however, that the Settlement Agreement contains confidentiality provisions in paragraph 11. As district courts in this Circuit have explained, confidentiality provisions in FLSA settlements are generally "unenforceable" because they operate "in contravention of the FLSA" by "precluding other employees' and the public's access to, and knowledge of," the agreement. *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1243, 1245 (M.D. Fla. 2010). And precluding public access to a settlement "thwarts Congress's intent both to advance employees' awareness of their FLSA rights and to ensure pervasive implementation of the FLSA in the workplace." *Id.* at 1245. Here, though, the terms of the settlement were orally published in open court at the Fairness Hearing and the monetary terms of the settlement are discussed in this Report and Recommendation. *See id.* at 1244–45; *Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992) ("Once a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case."). The Court finds that the step of publicly announcing the terms of the Settlement Agreement and discussing the monetary terms in this Report and Recommendation counteracts the policy problems with the confidentiality provisions.

With that said, the provisions within paragraphs 11(B) and 11(C) that seek to penalize Plaintiff for violating the confidentiality agreement contravene the FLSA's policy of allowing other employees or the public from obtaining information about the agreement. *See Dees*, 706 F. Supp. 2d at 1243, 1245. These provisions should, therefore, be stricken from the Settlement Agreement. In particular, paragraphs 11(B) and (C) provide as follows:

> (B) Bolds acknowledges that a violation of paragraph 11 or any of its subparts would cause immeasurable and irreparable damage to the Future Investment Defendants in an amount incapable of precise determination. Accordingly, Bolds agrees that the Future Investment Defendants shall be entitled to injunctive relief in any court of competent jurisdiction for any actual violation of paragraph 11 and all of its subparts, in addition to any other available remedies.

> (C) Any disclosure or dissemination, other than as described above in paragraph 11 or 11(A) [referencing to limited disclosures to Bolds's attorney, accountant, tax advisor, the Internal Revenue Service, other government agencies, as otherwise required by law, and pursuant to a subpoena] will be regarded as a breach of the AGREEMENT and a cause of action shall immediately accrue for injunctive relief.

The Court, therefore, respectfully **RECOMMENDS APPROVING the Settlement Agreement, EXCEPT for Paragraphs 11(B) and 11(C)** as these paragraphs would automatically entitle Defendants to injunctive relief against Bolds for violating the confidentiality provisions therein.

### b. Reasonableness of Attorney's Fees

As to the reasonableness of counsel's legal costs and fees, the Settlement Agreement awards Plaintiff's counsel an amount of $102,500 in attorney's fees and costs. Pursuant to the Court's Order, Plaintiff's counsel provided a Supplemental Memorandum along with an affidavit supporting the hourly rates for counsel and a copy of their timesheets on this case. *See* ECF No. [50], [50-1], and [50-2].

To calculate attorney's fee awards, courts generally use the "lodestar" method. *See Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). "The most useful starting point for determining the amount of a reasonable fee" using the lodestar method "is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *See Hensley*, 461 U.S. at 433; *ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (noting that the lodestar is "properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate" (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984))). "[T]here is a 'strong presumption' that the lodestar is the reasonable sum the attorneys deserve." *See Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565–66

(1986)).

"The first step in the computation of the lodestar is determining the reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id.* (quoting *Norman*, 836 F.2d at 1299). "The general rule is that the relevant market for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed." *Barnes*, 168 F.3d at 437. "The party seeking attorney's fees bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates," which requires "more than the affidavit of the attorney performing the work." *Loranger*, 10 F.3d at 781 (citation and quotation marks omitted). Of course, the court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value."[1] *Id.* (quotation marks omitted).

"The next step in the computation of the lodestar is the ascertainment of reasonable hours." *Norman*, 836 F.2d at 1301. "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434. "In other words, the Supreme Court requires fee applicants to exercise 'billing judgment.'" *Norman*, 836 F.2d at 1301 (quoting *Hensley*, 461 U.S. at 437). As noted

---

[1] Indeed, where "there is a lack of documentation or testimonial support the court may make the award on its own experience. Where documentation is inadequate, the district court is not relieved of its obligation to award a reasonable fee, but the district court traditionally has had the power to make such an award without the need of further pleadings or an evidentiary hearing. Likewise, no additional evidentiary hearing or pleadings are required where fee counsel fails to provide evidence on some factor which it contends the court ought to take into account. It is perfectly proper to award attorney's fees based solely on affidavits in the record." *Norman*, 836 F.2d at 1303 (footnote and citations omitted).

8

above, the "product" of the reasonable hourly rate and the number of hours reasonably expended on the litigation "is the lodestar." *See Bivins*, 548 F.3d at 1350.

As noted above, Plaintiff's counsel provided a Supplemental Memorandum, an affidavit, and their timesheets to support the amount of attorney's fees and costs. Looking first at the billable rates, Elliot Kozolchyk, the partner on the case, billed his time at $450 per hour whereas Dillon Cuthbertson, the associate on the case, billed his time at $375 per hour. In total, Mr. Kozolchyk billed 202.3 hours at $450 per hour for a total of $91,035.00 while Mr. Cuthbertson billed 86.9 hours at $375 per hour for a total of $32,587.50. *See* ECF No. [50] at 10. Collectively, their total attorney's fees were $123,622.50 and their costs were $515.00. *See* ECF No. [50] at 10.

According to Plaintiff's Supplemental Memorandum and time sheets, Plaintiff's counsel devoted a significant number of hours to the following tasks in their prosecution of Plaintiff's claims: (1) "[e]xtensive pre-suit investigation into Defendants' prior civil and criminal litigation history, assets, and public representations;" (2) "[r]eview and preservation of Defendants' social media and online representations about the club's operations and 'menu' of services;" (3) "[p]reparation and filing of the Complaint and related case-initiating documents," (4) "[d]etailed review and analysis of approximately 303 separate work-related text-message threads (comprising 2,887 pages) and additional text-message productions, together amounting to tens of thousands of messages [that were] central to: (a) Plaintiff's hours worked; (b) amounts paid; and (c) the level of control Defendants exercised over Plaintiff;" (5) "[t]ravel to and from Key West to inspect and photograph Defendants' premises, signage, and business operations;" (6) "[r]eview and analysis of deposition transcripts from related state-court litigation involving the same parties and overlapping factual issues;" (7) "[d]rafting and litigating responses to Defendants' Motion to Withdraw, Motion to Compel Arbitration, and Rule 11 threats;" (8) "[d]eveloping and litigating

discovery strategy, including multiple sets of written discovery, subpoenas, and conferral letters;" (9) "[r]eviewing Defendants' production of 2,570 pages of handwritten checks and daily log records and cross-referencing those documents with text messages and Plaintiff's testimony;" (10) "[p]reparing for and participating in the Court-ordered settlement conference, including review, synthesis, and presentation of key evidence;" and (11) "[o]ngoing communications with Plaintiff and related counsel to coordinate evidence, strategy, and settlement posture." *See* ECF No. [50] at 10-11. Further, Plaintiff explains that the 42,976 text messages that required extensive analysis "were the heart of the case" because "[t]hey documented, in real time, Plaintiff's schedule, hours, pay arrangements, discipline, and Defendants' pervasive control over her work" and "contradict[ed] Defendants' statements in their Rule 11 letter." *See* ECF No. [50] at 11.

Starting with the reasonable hourly rate, the Court must determine what the prevailing market rate in South Florida is for similar services by lawyers of skills, experience, and reputation reasonably comparable to those of Plaintiff's counsel. *See Loranger*, 10 F.3d at 781; *Barnes*, 168 F.3d at 437. Having considered the information contained in the Supplemental Memorandum and affidavit and in view of the Court's own knowledge and experience presiding over FLSA matters and as a practitioner in this District for nearly twenty years, *see Norman*, 836 F.2d at 1303, the Court finds that the requested hourly rates for Mr. Kozolchyk ($450) and Mr. Cuthbertson ($375) are reasonable and comparable to those awarded to similarly situated attorneys within this District.

Moving to the second step in the lodestar analysis, the Court must determine the number of hours reasonably expended on the litigation. *See Barnes*, 168 F.3d at 427. In doing so, the Court has a duty to ensure that counsel for the prevailing party has exercised "billing judgment," meaning counsel has made a good faith effort to exclude from the fee request any hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is

obligated to exclude such hours from his fee submission to his client. *See Norman*, 836 F.2d at 1301–02; *Hensley*, 461 U.S. at 434, 437. After a review of the time entries included in the timesheets, *see* ECF No. [50-1], the Court finds that the number of hours billed is reasonable. Although the lodestar here would be $123,622.50 in total attorney's fees and $515.00 in costs, the negotiated amount of attorney's fees and costs in the Settlement Agreement is $102,500, which is $21,637 less than the lodestar. In light of the foregoing, the Court finds that the attorney's fees payable as part of the settlement are reasonable as Plaintiff's counsel have cut their fee to obtain a settlement for their client.

## IV.  CONCLUSION

For the above reasons, I respectfully **RECOMMEND** that the Parties' Joint Motion for In Camera Review and Approval of FLSA Settlement Agreement and for Dismissal with Prejudice, **ECF No. [46]**, be **GRANTED in part and DENIED in part** and the Court **APPROVE** the Settlement Agreement, **except for Paragraphs 11(B) and 11(C), which should be STRICKEN** from the Settlement Agreement.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable K. Michael Moore. Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report, except on grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

CASE NO. 25-CV-10026-MOORE/Elfenbein

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida on December 15, 2025.

_____
**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All counsel of record